## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RANDALL LYKINS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** 11-CV-2133 JTM/DJW |
| | ) | |
| **CERTAINTEED CORPORATION** | ) | |
| **Serve: Amy Fowler, Esq.** | ) | |
| **Husch Blackwell LLP** | ) | **JURY TRIAL DEMANDED** |
| **4801 Main Street, Ste. 1000** | ) | |
| **Kansas City, MO  64112** | ) | |
| | ) | |
| **And** | ) | **COMPLAINT** |
| | ) | |
| **SAINT-GOBAIN CORPORATION** | ) | |
| **Serve: The Corporation Company, Inc.** | ) | |
| **112 SW 7ʰ Street, Suite 3C** | ) | |
| **Topeka, KS  66603** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____) | | |

## NATURE OF THE CLAIM

COMES NOW Randall D. Lykins ("Plaintiff"), by and through his attorney, states and alleges the following causes of action against defendants CertainTeed Corporation ("CertainTeed") and Saint-Gobain Corporation ("Saint-Gobain").

1.      This whistleblower retaliation action is brought by Plaintiff against CertainTeed and Saint-Gobain (collectively "Defendants").  Pursuant to Kansas law, Plaintiff seeks monetary damages for the unlawful termination of his employment in retaliation for his good-faith reporting of Defendants' illicit dumping of toxic wastewater directly into the Kansas City, Kansas municipal sewer system.

**JURISDICTION AND VENUE**

2.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different States.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices were committed within this judicial circuit.

4.      At all times mentioned herein, all of Defendants' employees were acting within the scope of their employment with Defendants CertainTeed and Saint-Gobain in furtherance of their businesses.

**PARTIES**

5.      Plaintiff resides in Cameron, Missouri.

6.      CertainTeed is a Delaware corporation with its principal place of business in Valley Forge, Pennsylvania.  CertainTeed is authorized and doing business in the state of Kansas.  CertainTeed is a wholly-owned subsidiary of Saint-Gobain.

7.      Saint-Gobain is a foreign corporation with its principal place of business in France.

8.      Defendants' operations are an integrated enterprise.

9.      Defendants, as an integrated enterprise, own and operate the CertainTeed fiberglass manufacturing plant located in Kansas City, Kansas ("the Plant").

10.     At all times relevant herein, Plaintiff was employed by Defendants CertainTeed and Saint-Gobain at their Kansas City, Kansas fiberglass manufacturing plant.

**GENERAL ALLEGATIONS**

11.     From October 1998 to August, 17, 2010, Plaintiff was employed by CertainTeed and Saint-Gobain at Defendants' Kansas City, Kansas manufacturing plant.

12.     Plaintiff began working for Defendants in October 1998 as a Production Supervisor.  After three years of dedicated service, Plaintiff was promoted in 2001 to Shift Manager.  In this position, he worked on the K21 line at the plant's "Hot End" and became intricately familiar with Defendants' glass melting process and their various environmental obligations.

13.     The K21 line uses a closed-loop wash water system to capture the waste by-products from the glass melting process.  This pollutant-contaminated water is pumped to the K21 wash water sump pit.  The polluted water is then pumped to the rotary-screen room where the solid contaminants are sifted from the water and disposed of as sludge.  When operating properly, the water in the system would be recycled within the closed-loop system.  However, when the K21 wash water sump pit becomes overloaded, Defendants use a Godwin pump to pump the contaminated water out of the sump pit and directly into the municipal sewer.

14.     On many occasions in the past, Plaintiff witnessed the former environmental engineer, Jim Eason, caution various managers against using the Godwin pump to discharge the contaminated K21 sump-pit water directly into the municipal sewer.  But after Mr. Eason stopped working at the plant in early 2010, Plaintiff noticed that the Godwin pump was being used on almost a daily basis.

15.     From January 2010, Plaintiff noticed that waste from both the Solvent Building and the Oven EP were wrongfully being pumped into the K21 sump pit on a regular basis.  As such, it was highly likely that the liquid in the sump pit contained environmental pollutants that were Solvent Building and Oven EP waste products such as ammonia sulfate, manganese dioxide, resin, ucacide, EP material, diesel fuel, silicone, liquid ammonia, and even known carcinogens such as chromium.  Because of the additional waste water from the Solvent Building

and Oven EP, the K21 sump pit consistently reached maximum capacity.  To prevent the sump pit from over-flowing, the Godwin pump was then used to pump the contaminated water directly into the municipal sewer system.  The sump-pit water contained environmental pollutants, as well as solid wastes and was discharged into the municipal sewer without being pre-tested, pre-treated, or pre-filtered.

16.    During this same timeframe, Plaintiff also observed that EP pellets, a highly regulated hazardous waste, were not being stored and disposed of properly.

17.    Plaintiff became very concerned that Defendants' practices were violating both state and federal environmental laws and regulations.   Several times in June 2010, Plaintiff attempted to address issues regarding the Godwin pump and EP pellets.  He informed Tim Miller (Production Manager), Jeff Chevalier (Hot End Manager), Donnie Roberts (Superintendant) and Eric Schramm (Plant Manager) that the continual use of the Godwin pump may be violating state or federal discharge laws.  Plaintiff' reports were met with either indifference or hostility.

18.    On August 1, 2010, Plaintiff reported to his newly-appointed supervisor, Donnie Roberts, that the Godwin pump was leaking and recommended that it no longer be used.  During that conversation Plaintiff told Mr. Roberts that "someone is going to get into serious trouble if the EPA inspects the plant and sees the Godwin pump."  Mr. Roberts responded, "What they don't know won't hurt them."

19.    About two weeks after this conversation, Loretta Francis (Environmental Engineer) sent out an email to plant management on Friday August 13, 2010 informing them that on August 17, 2010 the plant's sewer drains will be inspected by the Water Pollution Control Division of the Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government").  In that email, Ms. Francis stated that a day before the inspection "the Godwin

4

Pump will be taken away from its current location."  She then instructed the plant managers to "make sure your pit levels are low . . . before we take the pump away from the area."

20.    That Monday, August 16, 2010, Mr. Roberts handed Plaintiff a poor work performance letter for his signature.  Plaintiff refused to sign the letter because it contained many inaccuracies and misstatements.  Mr. Roberts told Plaintiff that since he refused to sign the letter, Plaintiff should not bother showing up for work the next day.

21.    The following day, August 17, 2010, David Stehly (Human Resources Manager) called  Plaintiff and requested that he come to the plant for a meeting.  The meeting was attended by Dave Stehly, Donnie Roberts (Superintendant), and Eric Schramm (Plant Manager).  During this meeting, Plaintiff told them that he felt he was being retaliated against for voicing his environmental concerns regarding Defendants' practices.  After that statement, Plaintiff was terminated.

22.    As a result of this unlawful termination, Plaintiff has suffered anxiety, humiliation and emotional distress, as well as extensive damage to his professional reputation.

### COUNT I
**Retaliatory Discharge in Violation of Kansas Law and Public Policy**

23.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

24.    Upon information and belief, Defendants' March 25, 2010 application for a Wastewater Discharge Permit from the Unified Government failed to state that the Plant regularly uses a Godwin pump to discharge wastewater from its K21 sump pit directly into the municipal sewer.

25.    Defendants Wastewater Discharge Permit requires that "[a]ny change of more than 10 percent in discharge strength or volume, modification of waste collection or a

5

pretreatment system, elimination of a discharge, changes in operational procedures, or other factors that would significantly alter the nature and frequency of discharge shall be reported to the Director [of the Unified Government's Water Pollution Control Division] in writing."

26.     Section 30-36 of the *Code of the Unified Government/Kansas City, Kansas* (adopted September 4, 2008) provides that  "[w]astewater discharge permits may be revoked at any time if the discharge does not comply with provisions of [Chapter 30 of the Code]" and "[f]ailure of a user to factually report the characteristics of discharges, or significant changes in operations, or wastewater constituents and characteristics, or . . . violation of conditions of the wastewater discharge permit, may be grounds for wastewater discharge permit revocation."

27.     Upon information and belief, from the date Defendants submitted their Wastewater Permit application until the date of Plaintiff's termination, Defendants failed to inform the Director of the Unified Government's Water Pollution Control Division, in writing, of Defendants' regular discharge of wastewater from the Plant's sump pit directly into the municipal sewer system.

28.     Defendants violated its Wastewater Discharge Permit by failing to make such report.

29.     Defendants' actions regarding the K21 sump pit wastewater dumping and the improper storage and disposal of EP pellets violated city, state and federal environmental laws and regulations such as: K.S. 65-164 *et seq.*, Chapter 30 of the *Code of the Unified Government/Kansas City, Kansas*, and 40 CFR Parts 403, 414, 501 and 503.

30.     From January 2010 until the day he was terminated, Plaintiff made numerous reports to Defendants' upper management of acts, practices, and/or conduct that Plaintiff

reasonably believed to be serious infractions of rules, regulations, or the law pertaining to public health and safety and the general welfare.

31.     A reasonably prudent person would have concluded that Defendants were engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare.

32.     Defendants had actual and constructive knowledge of Plaintiff's reports.

33.     Plaintiff's reports to Defendants' upper management were made in good faith.

34.     Plaintiff was terminated for making these reports.

35.     Defendant, through its agents and employees, engaged in unlawful retaliation against Plaintiff, which was committed with malice or reckless disregard.  Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

36.     Defendant's retaliatory actions against Plaintiff caused him to suffer emotional distress, inconvenience, and loss of enjoyment of life.

37.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff is now suffering and will continue to suffer damages, including emotional distress, and inconvenience.

WHEREFORE, Plaintiff prays for judgment against Defendants; for a finding that he was unlawfully terminated in contravention to Kansas law; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorney's and expert's fees; and for such other and further relief the Court deems just and proper.

Respectfully submitted:

**ANARADO LAW FIRM, LLC**

By: s/ AdoLisa J. Anarado
     AdoLisa J. Anarado, KS# 78166
     2300 Main Street, Suite 900
     Kansas City, Missouri 64108
     Telephone: 816.434.8300
     Email: adolisa@anaradolaw.com

     ATTORNEY FOR PLAINTIFF

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the United States District Court for the District Court of Kansas in Kansas City, Kansas as place of trial.

     s/ AdoLisa J. Anarado
     AdoLisa J. Anarado, KS# 78166