# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RANDALL LYKINS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  11-CV-2133 JTM/DJW |
| ) | |
| CERTAINTEED CORPORATION, ) | |
| ) | |
| and ) | |
| ) | |
| SAINT-GOBAIN CORPORATION ) | |
| ) | |
| Defendants. ) | |

## ANSWER

Defendant CertainTeed Corporation ("CertainTeed") by and through its attorneys, provides its Answer to Plaintiff's Complaint:

1. This whistleblower retaliation action is brought by Plaintiff against CertainTeed and Saint-Gobain (collectively "Defendants").  Pursuant to Kansas law, Plaintiff seeks monetary damages for the unlawful termination of his employment in retaliation for his good-faith reporting of Defendants' illicit dumping of toxic wastewater directly into the Kansas City, Kansas municipal sewer system.

> **ANSWER:** **CertainTeed admits Plaintiff purports to bring a state-law whistleblower retaliation claim against CertainTeed and Saint-Gobain Corporation, for which he is seeking monetary damages, but it denies engaging in any behavior giving rise to such a claim.  CertainTeed denies any and all remaining allegations in Paragraph 1.**

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different States.

> **ANSWER:** **CertainTeed admits Plaintiff asserts the elements necessary for federal diversity jurisdiction, including that the parties are citizens of**

**different states, but it denies engaging in any behavior giving rise to such jurisdiction or any liability or damages owed to Plaintiff whatsoever.  CertainTeed denies any and all remaining allegations in Paragraph 2.**

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because the unlawful employment practices were committed within this judicial circuit.

**ANSWER:** **CertainTeed admits Plaintiff asserts that venue is proper in this court but it denies engaging in any behavior giving rise to this cause of action in this venue.  CertainTeed denies any and all remaining allegations in Paragraph 3.**

4. At all times mentioned herein, all of Defendants' employees were acting within the scope of their employment with Defendants CertainTeed and Saint-Gobain in furtherance of their business.

**ANSWER:** **Paragraph 4 contains legal conclusions that do not require a response from CertainTeed.  To the extent a response is required, CertainTeed admits that, at times, CertainTeed employees act within the scope of their employment in furtherance of CertainTeed's business, but denies any employee engaged in any unlawful acts as alleged in Plaintiff's lawsuit in the scope of their employment.  CertainTeed denies any and all remaining allegations in Paragraph 4.**

## PARTIES

5. Plaintiff resides in Cameron, Missouri.

**ANSWER:** **CertainTeed admits upon information and belief the allegations in Paragraph 5.**

6. CertainTeed is a Delaware corporation with its principal place of business in Valley Forge, Pennsylvania.  CertainTeed is authorized and doing business in the state of Kansas.  CertainTeed is a wholly-owned subsidiary of Saint-Gobain.

**ANSWER:** **CertainTeed admits it is a Delaware corporation with its headquarters in Valley Forge, Pennsylvania, and authorized to do business in Kansas.  CertainTeed denies it is a wholly owned subsidiary of Saint-Gobain.  CertainTeed denies all remaining allegations in Paragraph 6.**

7. Saint-Gobain is a foreign corporation with its principal place of business in France.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 7.**

8. Defendants' operations are an integrated enterprise.

**ANSWER:** **Paragraph 8 contains legal conclusions that do not require a response from CertainTeed. To the extent a response is required, CertainTeed denies the allegations in Paragraph 8.**

9. Defendants, as an integrated enterprise, own and operate the CertainTeed fiberglass manufacturing plant located in Kansas City, Kansas ("the Plant").

**ANSWER:** **Paragraph 9 contains legal conclusions that do not require a response from CertainTeed. To the extent a response is required, CertainTeed admits it owns the fiberglass manufacturing plant in Kansas City, Kansas. CertainTeed denies all remaining allegations in Paragraph 9.**

10. At all times relevant herein, Plaintiff was employed by Defendants CertainTeed and Saint-Gobain at their Kansas City, Kansas fiberglass manufacturing plant.

**ANSWER:** **Paragraph 10 contains legal conclusions that do not require a response from CertainTeed. To the extent a response is required, CertainTeed admits it employed Plaintiff from September 16, 1997, to January 18, 2000, and again from March 1, 2001, to August 17, 2010, at its Kansas City, Kansas fiberglass manufacturing plant. CertainTeed denies all remaining allegations in Paragraph 10.**

## GENERAL ALLEGATIONS

11. From October 1998 to August, 17, 2010, Plaintiff was employed by CertainTeed and Saint-Gobain at Defendants' Kansas City, Kansas manufacturing plant.

**ANSWER:** **CertainTeed admits it employed Plaintiff from September 16, 1997, to January 18, 2000, and again from March 1, 2001, to August 17, 2010, at its Kansas City, Kansas fiberglass manufacturing plant. CertainTeed denies all remaining allegations in Paragraph 11.**

12. Plaintiff began working for Defendants in October 1998 as a Production Supervisor. After three years of dedicated service, Plaintiff was promoted in 2001 to Shift

Manager. In this position, he worked on the K21 line at the plant's "Hot End" and became intricately familiar with Defendants' glass melting process and their various environmental obligations.

> **ANSWER:** CertainTeed admits it initially employed Plaintiff as a Production Supervisor from September 16, 1997, until his voluntary resignation on January 18, 2000. CertainTeed further admits it rehired Plaintiff as a Production Supervisor on March 1, 2001, and promoted him to Shift Manager on or around November 1, 2005. CertainTeed further admits Plaintiff worked in the plant's "hot end" and would have necessarily become familiar with the production process. CertainTeed denies all remaining allegations in Paragraph 12.

13. The K21 line uses a closed-loop wash water system to capture the waste by-products from the glass melting process. This pollutant-contaminated water is pumped to the K21 wash water sump pit. The polluted water is then pumped to the rotary-screen room where the solid contaminants are sifted from the water and disposed of as sludge. When operating properly, the water in the system would be recycled within the closed-loop system. However, when the K21 wash water sump pit becomes overloaded, Defendants use a Godwin pump to pump the contaminated water out of the sump pit and directly into the municipal sewer.

> **ANSWER:** CertainTeed denies it uses a completely closed-loop wash water system, but admits that much of its wastewater from the K-21 sump pit goes through rotary screens that eliminate solid particles, and that some water is recycled back into the system. CertainTeed admits using a Godwin pump to pump wastewater from the sump pit only when necessary to prevent K-21 sump pit levels from damaging equipment, and it denies the water goes "directly" into the sewer. CertainTeed denies all remaining allegations in Paragraph 13.

14. On many occasions in the past, Plaintiff witnessed the former environmental engineer, Jim Eason, caution various managers against using the Godwin pump to discharge the contaminated K21 sump-pit water directly into the municipal sewer. But after Mr. Eason stopped working at the plant in early 2010, Plaintiff noticed that the Godwin pump was being used on almost a daily basis.

  **ANSWER:**  **CertainTeed is without information or belief sufficient to either admit or deny what Plaintiff purports to have witnessed and, therefore, denies the same. CertainTeed specifically denies the Godwin pump was used on a daily basis. CertainTeed denies all remaining allegations in Paragraph 14.**

15. From January 2010, Plaintiff noticed that waste from both the Solvent Building and the Oven EP were wrongfully being pumped into the K21 sump pit on a regular basis. As such, it was highly likely that the liquid in the sump pit contained environmental pollutants that were Solvent Building and Oven EP waste products such as ammonia sulfate, manganese dioxide, resin, ucacide, EP material, diesel fuel, silicone, liquid ammonia, and even known carcinogens such as chromium. Because of the additional waste water from the Solvent Building and Oven EP, the K21 sump pit consistently reached maximum capacity. To prevent the sump pit from over-flowing, the Godwin pump was then used to pump the contaminated water directly into the municipal sewer system. The sump-pit water contained environmental pollutants, as well as solid wastes and was discharged into the municipal sewer without being pre-tested, pre-treated, or pre-filtered.

  **ANSWER:**  **CertainTeed denies that water from the Solvent Building or the Oven wet electrostatic precipitator (WEP) was "wrongfully pumped" into the K-21 sump pit, as the system had been designed so the pit would catch the overflow from other areas. CertainTeed admits water in the K-21 sump pit may contain ammonia sulfate, manganese dioxide, resin, ucacide, EP material, silicone, liquid ammonia, and chromium. CertainTeed denies the K-21 sump pit would reach maximum capacity because of water from the Solvent Building. CertainTeed admits the Godwin pump was used when necessary to prevent the K-21 sump pit from reaching a certain level. CertainTeed denies water removed from the K-21 sump pit contained a concentration of any chemical that exceeded any applicable effluent limit established by CertainTeed's Wastewater Discharge Permit or any other limitation established by applicable law, and it further denies that such water was not tested or filtered. CertainTeed denies all remaining allegations in Paragraph 15.**

16.     During this same timeframe, Plaintiff also observed that EP pellets, a highly regulated hazardous waste, were not being stored and disposed of properly.

**ANSWER:    CertainTeed denies the allegations in Paragraph 16.**

17.     Plaintiff became very concerned that Defendants' practices were violating both state and federal environmental laws and regulations.  Several times in June 2010, Plaintiff attempted to address issues regarding the Godwin pump and EP pellets.  He informed Tim Miller (Production Manager), Jeff Chevalier (Hot End Manager), Donnie Roberts (Superintendant) and Eric Schramm (Plant Manager) that the continual use of the Godwin pump may be violating state or federal discharge laws.  Plaintiff's reports were met with either indifference or hostility.

**ANSWER:    CertainTeed denies the allegations in Paragraph 17.**

18.     On August 1, 2010, Plaintiff reported to his newly-appointed supervisor, Donnie Roberts, that the Godwin pump was leaking and recommended that it no longer be used.  During that conversation Plaintiff told Mr. Roberts that "someone is going to get into serious trouble if the EPA inspects the plant and sees the Godwin pump."  Mr. Roberts responded, "What they don't know won't hurt them."

**ANSWER:    CertainTeed denies the allegations in Paragraph 18.**

19.     About two weeks after this conversation, Loretta Francis (Environmental Engineer) sent out an email to plant management on Friday August 13, 2010 informing them that on August 17, 2010 the plant's sewer drains will be inspected by the Water Pollution Control Division of the Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government").  In that email Ms. Francis stated that a day before the inspection "the Godwin pump will be taken away from its current location."  She then instructed the plant managers to "make sure your pit levels are low . . . before we take the pump away from the area."

>    **ANSWER:** **CertainTeed admits that Loretta Francis sent an email to the plant's Shift Managers on August 13, 2010, with several housekeeping tasks -- including noting the Godwin pump would be placed in it storage cage -- to prepare for the Water Pollution Control Division's August 17, 2010 inspection.  CertainTeed specifically denies any implication that the storage of the Godwin pump was an attempt to hide any unlawful activity, the existence of which CertainTeed denies.  CertainTeed denies any and all remaining allegations in Paragraph 19.**

20. That Monday, August 16, 2010, Mr. Roberts handed Plaintiff a poor work performance letter for his signature.  Plaintiff refused to sign the letter because it contained many inaccuracies and misstatements.  Mr. Roberts told Plaintiff that since he refused to sign the letter, Plaintiff should not bother showing up for work the next day.

>    **ANSWER:** **CertainTeed admits Mr. Roberts gave Plaintiff a performance letter on August 16, 2010, at the end of Plaintiff's shift, and asked him to review it so they could discuss it the next day.  CertainTeed further admits Plaintiff did not sign the letter.  CertainTeed denies all remaining allegations in Paragraph 20.**

21. The following day, August 17, 2010, David Stehly (Human Resources Manager) called Plaintiff and requested that he come to the plant for a meeting.  The meeting was attended by Dave Stehly, Donnie Roberts (Superintendant), and Eric Schramm (Plant Manager).  During this meeting, Plaintiff told them that he felt he was being retaliated against for voicing his environmental concerns regarding Defendants' practices.  After that statement, Plaintiff was terminated.

>    **ANSWER:** **CertainTeed admits Mr. Stehly called Plaintiff on August 17, 2010, about coming to the plant for a meeting to discuss the performance letter, that the meeting was attended by Plaintiff, Mr. Stehly, Mr. Roberts, and Mr. Schramm, and that, after Plaintiff displayed insubordinate behavior throughout the meeting, Plaintiff's employment was terminated.  CertainTeed specially denies Plaintiff expressed any alleged belief that he was being retaliated against for voicing environmental concerns.  CertainTeed denies all remaining allegations in Paragraph 21.**

22. As a result of this unlawful termination, Plaintiff has suffered anxiety, humiliation and emotional distress, as well as extensive damage to his professional reputation.

> **ANSWER:** CertainTeed denies the allegations in Paragraph 22.

## COUNT I

23. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

> **ANSWER:** CertainTeed incorporates by reference its answers to Paragraphs 1 through 22.

24. Upon information and belief, Defendants' March 25, 2010 application for a Wastewater Discharge Permit from the Unified Government failed to state that the Plant regularly uses a Godwin pump to discharge wastewater from its K21 sump pit directly into the municipal sewer.

> **ANSWER:** CertainTeed admits it did not describe on its March 2010 Application for Industrial Discharge Permit its use of the Godwin pump, but it denies such information was required, or that by failing to include such information it was in violation of its application or of any local, state, or federal laws. CertainTeed denies all remaining allegations in Paragraph 24.

25. Defendants' Wastewater Discharge Permit requires that "[a]ny change of more than 10 percent in discharge strength or volume, modification of waste collection or a pretreatment system, elimination of a discharge, changes in operational procedures, or other factors that would significantly alter the nature and frequency of discharge shall be reported to the Director [of the Unified Government's Water Pollution Control Division] in writing."

> **ANSWER:** CertainTeed admits that attached to its Wastewater Discharge Permit is a list entitled "Wastewater Discharge Permit Standard Conditions," and that the seventh paragraph of that list contains the text in Paragraph 25. CertainTeed denies all remaining allegations in Paragraph 25.

26. Section 30-36 of the *Code of the Unified Government/Kansas City, Kansas* (adopted September 4, 2008) provides that "[w]astewater discharge permits may be revoked at any time if the discharge does not comply with provisions of [Chapter 30 of the Code]" and "[f]ailure of a user to factually report the characteristics of discharges, or significant changes in operations, or wastewater constituents and characteristics, or . . . violation of conditions of the wastewater discharge permit, may be grounds for wastewater discharge permit revocation."

> **ANSWER:** **CertainTeed admits that § 30-36 of the Unified Government Code contains the text in Paragraph 26. CertainTeed denies all remaining allegations in Paragraph 26.**

27. Upon information and belief, from the date Defendants submitted their Wastewater Permit application until the date of Plaintiff's termination, Defendants failed to inform the Director of the Unified Government's Water Pollution Control Division, in writing, of Defendants' regular discharge of wastewater from the Plant's sump pit directly into the municipal sewer system.

> **ANSWER:** **CertainTeed admits it did not contact the Director of the Water Pollution Control Division between March 2010 and August 2010, but it denies it had any obligation to do so, or that by failing to contact the Director it was in violation of its permit or of any local, state, or federal laws. CertainTeed denies all remaining allegations in Paragraph 27.**

28. Defendants violated its Wastewater Discharge Permit by failing to make such report.

> **ANSWER:** **CertainTeed denies the allegations in Paragraph 28.**

29. Defendants' actions regarding the K21 sump pit wastewater dumping and the improper storage and disposal of EP pellets violated city, state and federal environmental laws and regulations such as: K.S. 65-164 *et seq.,* Chapter 30 of the *Code of the Unified Government/Kansas City, Kansas,* and 40 CFR Parts 403, 414, 501 and 503.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 29.**

30. From January 2010 until the day he was terminated, Plaintiff made numerous reports to Defendants' upper management of acts, practices, and/or conduct that Plaintiff reasonably believed to be serious infractions of rules, regulations, or the law pertaining to public health and safety and the general welfare.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 30.**

31. A reasonably prudent person would have concluded that Defendants were engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 31.**

32. Defendants had actual and constructive knowledge of Plaintiff's reports.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 32.**

33. Plaintiff's reports to Defendants' upper management were made in good faith.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 33.**

34. Plaintiff was terminated for making these reports.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 34.**

35. Defendant, through its agents and employees, engaged in unlawful retaliation against Plaintiff, which was committed with malice or reckless disregard. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 35.**

36. Defendants' retaliatory actions against Plaintiff caused him to suffer emotional distress, inconvenience, and loss of enjoyment of life.

**ANSWER:** **CertainTeed denies the allegations in Paragraph 36.**

37. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff is now suffering and will continue to suffer damages, including emotional distress, and inconvenience.

**ANSWER:  CertainTeed denies the allegations in Paragraph 37.**

WHEREFORE, Plaintiff prays for judgment against Defendants; for a finding that he was unlawfully terminated in contravention to Kansas law; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorney's and expert's fees; and for such other and further relief the Court deems just and proper.

**ANSWER:  CertainTeed denies Plaintiff is entitled to any of the relief requested in the WHEREFORE paragraph of Plaintiff's Complaint.**

## ANSWER TO ALL ALLEGATIONS

CertainTeed denies each and every allegation in Plaintiff's Complaint not specifically admitted in this **ANSWER**.

## DEFENSES

1. Plaintiff's Complaint fails in whole or in part to state a claim upon which relief can be granted against CertainTeed.

2. Plaintiff's claim(s) are barred in whole or in part by the applicable statutes of limitations and/or by the requisite administrative filing deadlines.

3. This Court lacks jurisdiction over some or all of Plaintiff's claims.

4. CertainTeed is an equal opportunity employer that does not retaliate against employees for engaging in activity protected under the law.

5. To the extent that Plaintiff purports to assert a whistleblower retaliation claim against CertainTeed, Plaintiff has failed to establish and cannot establish a prima facie case of whistleblower retaliation and, even if he could, he cannot establish CertainTeed's articulated legitimate, non-retaliatory reasons for its actions were pretextual.  In other words, CertainTeed denies it retaliated against Plaintiff for engaging in protected activity.

6. CertainTeed's actions with respect to Plaintiff were non-retaliatory and were based on legitimate reasons and carried out in the good faith exercise of CertainTeed's reasonable business judgment.

7. To the extent any agent(s) of CertainTeed committed any of the acts alleged by Plaintiff, which is specifically denied, such actions were not done in the exercise of such agent's authority or within the course and scope of his/her employment with CertainTeed, nor done in furtherance of CertainTeed's business.  Consequently, CertainTeed is not liable for the alleged conduct of any such agent.

8. CertainTeed would have made the same employment decisions with respect to Plaintiff absent any alleged unlawful or impermissible considerations, the existence of such unlawful or impermissible considerations CertainTeed specifically denies.

9. CertainTeed in good faith alleges Plaintiff has failed to mitigate his claimed damages.

10. To the extent Plaintiff recovers any damages based on his claims, the existence of which CertainTeed specifically denies, CertainTeed is entitled to a set-off or credit for amounts Plaintiff earned or could have earned if he had mitigated his claimed damages.

11. Plaintiff is not entitled to recover any punitive damages, the existence of which CertainTeed specifically denies, because Plaintiff has not set forth and cannot set forth facts

sufficient to support a claim for such damages, because CertainTeed adopted policies and practices in support of its non-retaliation obligations and in good faith attempted to comply with those obligations, and because any employee of CertainTeed who engaged in conduct with respect to Plaintiff as alleged in his Complaint, the existence of which conduct CertainTeed specifically denies, lacked sufficient authority to subject CertainTeed to punitive damages.

12. Plaintiff's prayer for punitive damages violates the Eighth and Fourteenth Amendments to the United States Constitution, as well as the Kansas Constitution.

13. Any injury to Plaintiff, the existence of which CertainTeed specifically denies, was caused by Plaintiff and/or by third parties over whom CertainTeed had no control or who were acting outside the course and scope of their employment with CertainTeed, not by CertainTeed.

14. CertainTeed is entitled to attorneys' fees and other costs associated with the defense of this matter.

15. After conducting discovery, CertainTeed may have an after-acquired evidence defense and therefore preserves such affirmative defense in this pleading.

16. CertainTeed reserves the right to assert additional defenses as they become evident through discovery or investigation.

WHEREFORE, having fully answered Plaintiff's Complaint, CertainTeed requests this Court dismiss Plaintiff's Complaint in its entirety and award CertainTeed its costs, its attorneys' fees, and any additional relief this Court deems just and proper.

Respectfully Submitted,

/s/ Amy M. Fowler
John R. Phillips            KS Dist. Ct. No. 70227
Amy M. Fowler               KS Bar No. 20152
Traci Daffer Martin         KS Bar No. 24284
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000 Telephone
(816) 983-8080 Facsimile
john.phillips@huschblackwell.com
amy.fowler@huschblackwell.com
traci.martin@huschblackwell.com
**Attorneys for Defendants**

# CERTIFICATE OF SERVICE

This is to certify that on the 11th day of April 2011, the above and foregoing was served using the Court's ECF notification system to:

AdoLisa J. Anardo
Anarado Law Firm, LLC
2300 Main Street - Suite 900
Kansas City, Missouri  64108
adolisa@anaradolaw.com

**Attorney for Plaintiff**

/s/Amy M. Fowler
**Attorney for Defendant**