IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDALL LYKINS,

    Plaintiff,

v.                                                                                    Case No. 11-2133-JTM-DJW

CERTAINTEED CORPORATION,
et al.,

    Defendants.

## MEMORANDUM AND ORDER

In this whistleblower retaliation action, Plaintiff claims that Defendants unlawfully terminated his employment in retaliation for reporting violations of environmental laws and regulations. This matter is before the Court on the following motions: Plaintiff's Motion for Protective Order (ECF No. 27), Defendants' Motion for Protective Order (ECF No. 28), and Plaintiff's Motion to Compel Inspection (ECF No. 36). Plaintiff requests that the Court enter a protective order instructing Defendant CertainTeed Corporation ("CertainTeed") to preserve the operational and mechanical status quo at their Kansas City, Kansas fiberglass manufacturing plant pending Plaintiff's inspection of the plant facilities. He also requests that the Court exclude "environmental information not publicly filed with any federal or state regulatory authorities" from the parties' confidentiality order. In his Motion to Compel Inspection, Plaintiff requests an order compelling Defendant CertainTeed to allow entry onto its premises for the purpose of conducting an inspection of its manufacturing plant.

As explained below, the Court will not enter an order for Defendant CertainTeed to preserve the operational and mechanical status quo of the K-21 line at its Kansas City, Kansas plant.

Defendant CertainTeed, however, will be ordered to permit Plaintiff entry onto its premises to conduct an inspection of the plant as sought by Plaintiff's First Request for Permission to Enter & Inspect Land.  With regard to the parties' dispute as to their confidentiality order, the Court concludes that Defendants have shown sufficient reason for the parties to be prohibited from disclosing and/or using "environmental information not publicly filed with any federal or state regulatory authorities."  But this category of information will be included in the protective order with an exception for the reporting of environmental violations to governmental agencies.

## I.  Relevant Facts

Plaintiff brings this cause of action for retaliatory discharge in violation of Kansas law and public policy.  He claims that Defendants terminated his employment in August 2010 in retaliation for alleged reports to upper management of conduct that Plaintiff purportedly believed violated environmental laws or regulations.  Plaintiff alleges in his complaint that starting in January 2010, while he worked as a plant shift manager on the K-21 line, he noticed contaminated K-21 sump-pit water being pumped directly into the municipal sewer.  Defendants deny Plaintiff's allegations and assert that Plaintiff's employment was terminated for legitimate, non-retaliatory reasons wholly unrelated to Plaintiff's alleged reports regarding environmental violations.

On August 23, 2011, Plaintiff served his First Request for Permission to Enter & Inspect Land of Defendant CertainTeed Corporation ("Request for Inspection").  He seeks permission under Fed. R. Civ. P. 34(a)(2) to enter the Kansas City, Kansas fiberglass manufacturing plant possessed and/or controlled by Defendant CertainTeed Corporation "to inspect, measure, survey, photograph, test, and sample the property and any designated object and operation on it."  The Request for Inspection sets out the following 21 designated property, objects, and operations for inspection:

1. All the grounds outside the KCK Plant buildings, including all storage sheds and waste disposal areas.
2. Wastewater drainage system for entire KCK Plant.
3. All mechanical and operational equipment related to the Solvent building, including all pipes and sewer drains inside and outside the building.
4. All mechanical and operational equipment linking the Solvent building to the Plant's Hot End.
5. All areas in the Solvent Building where chemicals are stored.
6. Process in the Solvent Building for mixing the batch
7. Process in the Solvent Building for production of wastewater.
8. Wastewater drainage system for Solvent Building.
9. All mechanical and operational equipment related to the Hot End, including all pipes and sewer drains inside and outside the building.
10. Wastewater drainage system for Hot End.
11. K-21 manufacturing line.
12. All sources of wastewater on K-21 manufacturing line.
13. K-21 Sump Pit, including all related mechanical and operation[al] equipment.
14. All pipes leading to and from K-21 Sump Pit.
15. Wastewater drainage system for K-21 Sump Pit.
16. Process in Hot End for draining all wastewater, including process for draining water from K-21 Sump Pit.
17. All mechanical and operational equipment related to the rotary screen room, including all pipes leading to and from the area.
18. Process in rotary screen room for draining wastewater.
19. Process in rotary screen room for disposing [of] solid waste.
20. All drains and sewers leading directly to Kansas City, Kansas municipal water system.
21. Storage and disposal of EP Pellets.

On September 26, 2011, Defendant CertainTeed served the following objection to the request:

CertainTeed objects to this request as seeking irrelevant information and/or as not being reasonably calculated to lead to the discovery of admissible evidence. CertainTeed further objects to this request as overly broad to the extent it seeks inspection of areas of the KCK facility not at issue in this lawsuit and to the extent it requests measuring, surveying, photographing, testing, and/or sampling the property and designated objects and operations on it. CertainTeed further objects to this request as unduly burdensome in that it interferes with CertainTeed's operations, poses a potential safety risk to employees and those participating in the inspection, and poses and undue expense for CertainTeed. CertainTeed further objects to this request to the extent this request requires exposure to confidential business and/or proprietary information and processes not generally available to the public.

CertainTeed further objects that the request is intended to annoy and harass CertainTeed.[1]

## II. Plaintiff's Request for a Preservation Order

Plaintiff requests that the Court enter a protective order instructing Defendants to preserve the operational and mechanical status quo at CertainTeed's Kansas City, Kansas fiberglass manufacturing plant pending the completion of Plaintiff's inspection of the plant. He argues that the potential shut-down of the plant's K-21 line threatens the preservation of discoverable information. He is concerned that Defendants may take steps to physically, mechanically and/or operationally alter the K-21 line, the K-21 sump pit, the solvent building and the sewer lines associated with these areas. Defendants have not yet disclosed the specific steps they are taking regarding the K-21 line. Nor have they disclosed whether they have or are planning to mechanically alter the K-21 line or make physical and/or operational changes to the line or the K-21 sump pit. Because of these impending, potentially evidence destroying measures, Plaintiff requests that this Court enter a protective order instructing Defendants to maintain the status quo at the plant pending the completion of an on-site inspection by Plaintiff. He argues that such an order should not be unduly burdensome to Defendants' business operations, especially if Defendants permit Plaintiff to complete his inspection in the very near future.

Defendants oppose Plaintiff's request for a protective order mandating that CertainTeed continue to run a production line in a specific way regardless of cost and/or other business necessity. They argue that Plaintiff fails to set forth a legitimate basis to justify an unprecedented order mandating that CertainTeed continue operating a manufacturing line regardless of business necessity

---

[1] Ex. B to Pl.'s Mem. in Supp. of Mot. to Compel Inspection (ECF No. 37-2).

or cost. They state that toward the end of 2010, CertainTeed began transitioning the binder formula used to produce insulation on the K-21 line to a "greener" formula. In February 2011, CertainTeed formally switched to the current binder formula. As a result, the insulation currently produced on the K-21 line is not the same product and does not contain the same chemicals as that produced when Plaintiff was employed with CertainTeed in 2010.

A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation.[2] Ordinarily, a specific order from the court directing one or both parties to preserve evidence is not required.[3] The court has inherent power, however, to make such an order when necessary.[4] As in *United States ex rel. Smith v. The Boeing Co.*,[5] the Court finds the balancing test set out in *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*,[6] to be helpful in determining whether a preservation order should be entered. In *Capricorn Power*, the court considered the following three factors:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

---

[2] *Benton v. Dlorah, Inc.*, No. 06-CV-2488-KHV, 2007 WL 3231431, at *4 (D. Kan. Oct. 30, 2007).

[3] *United States ex rel. Smith v. The Boeing Co.*, No. 05-1073-WEB, 2005 WL 2105972, at *2 (D. Kan. Aug. 31, 2005).

[4] *Id.* (citing *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (Fed. Cl. 2004)).

[5] 2005 WL 2105972, at *2.

[6] 220 F.R.D. 429, 433-34 (W.D. Pa. 2004).

Plaintiff bases his motion for a preservation order on his concerns that Defendant CertainTeed may take steps to physically, mechanically and/or operationally alter the K-21 line, the K-21 sump pit, the solvent building and the sewer lines associated with these areas. He asks for an order instructing Defendants to preserve the "operational and mechanical status quo" of the Kansas City, Kansas plant. Plaintiff does not clarify in his motion what exactly preserving the "operational and mechanical status quo" of Defendant CertainTeed's plant would entail. If, as Defendants suggest, it requires Defendant CertainTeed to continue to run a production line in a specific way regardless of cost or other business reason, then the Court finds that the duty to preserve evidence does not extend that far. It does not require a manufacturing plant to continue production of a certain product line. The duty to preserve, however, does extend to maintaining or preserving evidence relevant to Plaintiff's claims, such as how the K-21 line operated during the relevant time period. This includes Defendant CertainTeed's use of the K-21 sump pit, the solvent building and the sewer lines associated with these areas.[7] Defendants must comply with their legal obligation to preserve relevant evidence or be subject to sanctions for spoliation.

Plaintiff fails to convince the Court that there is imminent danger that relevant evidence will be destroyed or that he will likely suffer any irreparable harm in the absence of a specific order directing preservation. As Defendants point out, Plaintiff's proposed plant inspection would not even reflect the condition of the manufacturing line as it existed when Plaintiff allegedly complained over a year ago. And, considering the nature of Defendant CertainTeed's business and the physical

---

[7]*See Benton,* 2007 WL 3231431, at *4 (a litigant has a duty to preserve "what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.").

and logistical limitations related to an operational manufacturing plant, the Court is reluctant to impose a broad preservation order to "preserve the operational and mechanical status quo." The Court is not persuaded that a preservation order is appropriate or that it would serve any useful purpose in light of the parties' existing legal obligations to preserve relevant evidence. Plaintiff's motion for entry of a protective order instructing Defendants to preserve the operational and mechanical status quo of the Kansas City, Kansas plant is therefore denied.

## III.     Plaintiff's Request for Order Compelling Inspection of Defendant CertainTeed's Premises

Plaintiff also filed a Motion to Compel Inspection in which he seeks an order compelling Defendant CertainTeed to allow entry onto its premises for the purpose of conducting an inspection of its Kansas City, Kansas fiberglass manufacturing plant. In support of his motion, Plaintiff claims that the only way to fully ascertain the veracity of Defendants' claims regarding the operation of the K-21 line and the manner in which wastewater is produced and disposed of is to evaluate the actual production and disposal of wastewater while the plant is operational. Anything short of an on-site inspection would force Plaintiff and this Court to simply "take Defendants' word for it" regarding the mechanical operations of wastewater production at the Plant.

Defendants argue that Plaintiff has failed to establish the relevancy of the requested inspection. The K-21 line at issue no longer manufactures the same type of insulation as when Plaintiff was employed there. Accordingly, Plaintiff's proposed inspection would not reflect the condition of the manufacturing line as it existed more than a year ago when Plaintiff allegedly complained of environmental violations.

Federal Rule of Civil Procedure 34(a) governs requests for entry onto land for purposes of inspection. It provides that any party may serve on another party a request within the scope of Rule

26 "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."[8]

A request for inspection must "describe with reasonable particularity each item or category of items to be inspected" and "specify a reasonable time, place, and manner for the inspection and for performing the related acts."[9] If the parties differ as to whether an inspection is appropriate, the court must balance the respective interests by weighing "the degree to which the proposed inspection will aid in the search for truth" against the "burdens and dangers created by the inspection."[10] Whether to permit an inspection pursuant to Rule 34 is within a court's discretion.[11] Rule 34 permits the "observation of machinery, work practices, or manufacturing operations on a party's premises."[12]

But this right of entry under Rule 34 to inspect and test has limits.[13] The court has discretion to limit discovery if it determines that "(I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information . . . ; or (iii) the burden or expense of the proposed discovery outweighs its likely

---

[8] Fed. R. Civ. P. 34(a)(2).

[9] Fed. R. Civ. P. 34(b)(1)(A) and (B).

[10] *Morris v. Cabelas*, No. 10-2559-EFM-GLR, 2011 WL 2516904, at *1 (D. Kan. June 23, 2011) (citing *Welzel v. Bernstein*, 233 F.R.D. 185, 186 (D.D.C. 2005) (internal quotations omitted).

[11] *Id.*

[12] *McDonald v. Kellogg Co.*, 08-2473-JWL-JPO, 2011 WL 484191, at *2 (D. Kan. Feb. 7, 2011) (quoting Jay E. Grenig and Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery and Disclosure*, § 9.22 (2d ed.)).

[13] *Id.*

benefit."[14]  Where the burdens and dangers that would accompany a proposed study outweigh the degree to which the proposed study will aid in the search for the truth, the study should not be permitted.[15]

Defendants argue that the request for inspection of the plant premises in 2011 does not seek relevant information about Plaintiff's allegations that Defendants wrongfully dumped toxic wastewater into the municipal sewer system in 2010.  Defendants again point out that the K-21 manufacturing line at issue does not manufacture the same type of insulation that it did when Plaintiff allegedly complained about environmental concerns in 2010.

Plaintiff asserts that his request for inspection is relevant to his allegations that Defendants wrongfully used a Goodwin pump to discharge toxic wastewater from the K-21 sump pit into the municipal sewer in 2010.  Plaintiff claims that he was terminated because he made multiple complaints to Defendants' upper management regarding the wrongful use of the Goodwin pump and Defendants' improper storage and disposal of EP Pellets. In order to make a prima facie case of retaliatory discharge based on his reports of Defendants' wrongdoing, Plaintiff asserts that he must prove, among other things, that based on his observations, he reasonably concluded that Defendants were engaged in activities that violated rules, regulations, or the law pertaining to public health, safety, and the general welfare.  Plaintiff seeks an inspection of the Kansas City, Kansas plant to acquire evidence regarding his observations and the reasonableness of his conclusions. Specifically, he seeks the plant inspection to obtain information regarding the process for the production and disposal of K-21 wastewater, and the storage and disposal of EP Pellets.

---

[14] Fed. R. Civ. P. 26(b)(2)(C).

[15] *McDonald*, 2011 WL 484191, at *2.

The Court finds that Plaintiff's request for inspection of Defendant CertainTeed's manufacturing plant does in fact seek information relevant to Plaintiff's claims. A plant inspection would reveal information pertinent to Plaintiff's allegations that sump-pit waste water was being pumped into the municipal sewer and whether Defendants had knowledge of it. Defendants' relevancy objection to the request for inspection is therefore overruled.

Defendants also object to the Request for Inspection as overly broad. They argue that Plaintiff's inspection request encompasses the entire CertainTeed facility, which covers 64 acres. They further argue that the Request includes areas that are in no way touched upon in Plaintiff's allegations in the Complaint.

Plaintiff maintains that its Request for Inspection is not overly broad and does not encompass all 64 acres of CertainTeed's Kansas City, Kansas plant. Rather, he claims that his Request for Inspection is narrowly focused on only those areas relevant to the K-21 wastewater production. The Court has reviewed Plaintiff's Request for Inspection and finds that it is reasonably limited to areas with some relevancy to Plaintiff's allegations in this case. Defendants' overly broad objection to the request for inspection is overruled.

Additionally, Defendants object that the design and process by which products are manufactured at its Kansas City, Kansas facility involve confidential and proprietary trade secrets, and the equipment used in the manufacturing process is proprietary. Plaintiff contends that any such objection should be dismissed by the Court because it would conceivably be covered under a potential protective order that has not yet been entered by the Court. The Court finds that Defendants' concerns regarding their confidential and proprietary trade secrets are adequately

addressed with the protective order that the Court will enter in conjunction with this Memorandum and Order.

Defendants also object that permitting Plaintiff and/or his counsel to enter and inspect the plant facility will disrupt CertainTeed's operations and pose a potential safety risk to those individuals, as well as the employees participating in the inspection. In support of their objection, they have submitted the Affidavit of Ron Rodvelt, Engineering Manager. Mr. Rodvelt states that permitting Plaintiff and his counsel to enter and inspect the Kansas City, Kansas facility "poses a potential safety risk to those individuals, as well as the employees participating in the inspection."[16]

In his reply, Plaintiff counters this argument by pointing to a recent District of Kansas decision, *McDonald v. Kellogg Co.*,[17] wherein Judge O'Hara rejected a similar safety-based argument, finding that the defendant failed to make a "particularized showing" that the proposed inspection of the defendant's bakery facility would create an undue burden or danger. Plaintiff argues that, like the defendants in *McDonald*, Defendants have made nothing more than conclusory, unsubstantiated assertions regarding the burdens and safety risks an inspection involves. In their response and the affidavits submitted in support, Defendants do not make a "particularized showing" of undue burden or danger.

The Court finds that Defendants have not shown, much less made a particularized showing, that Plaintiff's proposed inspection of the Kansas City, Kansas plant will pose such a safety risk that Plaintiff should not be permitted to inspect the plant. The Court is confident that Defendant

---

[16] Ex. A to Def. CertainTeed Corp.'s Resp. in Opp. (ECF No. 41-1).

[17] 2011 WL 484191, at *2.

CertainTeed can take any necessary precautions to ensure the safety of Plaintiff, his counsel, and any employees needed for the inspection.

In summary, the Court overrules all of Defendants objections to Plaintiff's Request for Inspection, except for their objection regarding confidential and proprietary trade secrets. That objection, however, will be adequately addressed by the Court's entry of a protective order limiting the parties' use and disclosure of confidential information. Plaintiff's Motion to Compel Inspection is therefore granted. Defendant CertainTeed Corporation shall make its fiberglass manufacturing plant in Kansas City, Kansas, available for inspection, measurement, surveying, photographing, and testing by Plaintiff, as permitted under Fed. R. Civ. P. 34(a)(2), at a date and time to which the parties agree.

## IV.  The Parties' Dispute Regarding Inclusion of Non-Public Environment Information in the  Protective Order

Although the parties agree regarding the need for a protective order limiting the disclosure and use of confidential documents and information, they disagree on whether information Defendants have classified as "environmental information not publicly filed with any federal or state regulatory authorities" should be included in the protective order. Plaintiff objects to a confidential designation for this information, arguing that no good cause exists to support such a designation, especially since the determination would rely wholly on Defendants' compliance with their regulatory reporting obligations. In response, Defendants assert that documents or other information that constitute "environmental information not publicly filed with any federal or state regulatory authorities" should be entitled to the same confidentiality protection in this case as other internal business or personnel documents to which the parties have already agreed to designate as confidential.

Defendants argue that the parties should not be permitted to disclose documents and testimony containing environmental information that has not been publicly filed with a federal or state regulatory authority. Such disclosure could, among other things, contain sensitive information regarding Defendants' proprietary products or processes, could impact Defendants' standing in the community, and/or impact personal and/or work relationships of employees. Given the potentially sensitive nature of such non-public information, they assert that good cause exists for permitting the parties to designate as confidential documents and/or testimony containing non-public environmental information.

Plaintiff argues that Defendants have not provided good cause for designating the documents as confidential. He anticipates that during discovery there may be information revealed that should have been reported to governmental agencies, but that Defendants will have failed to do so. To the extent evidence is discovered that should have been reported to governmental agencies, Plaintiff argues that it would be improper for Defendants to benefit from their past environmental reporting failures by having a protective order preclude the future disclosure of that information.

Defendants have shown sufficient reason for the parties to be prohibited from disclosing and/or using environmental information not publicly filed with any federal or state regulatory authorities. But Plaintiff has shown that an exception should be made for information that should have been reported to governmental agencies. The Court will therefore include the category of "environmental information not publicly filed with any federal or state regulatory authorities" in the parties' protective order, but with an exclusion for the reporting of environmental violations to the appropriate governmental agencies.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Protective Order (ECF No. 27) and Defendants' Motion for Protective Order (ECF No. 28) are granted in part and denied in part. The parties have shown good cause for the entry of a protective order that limits their disclosure and use of certain confidential information in this case. Defendants have further shown good cause to include "environmental information not publicly filed with any federal or state regulatory authorities" within the categories of protected information subject to the protective order. But Plaintiff has shown sufficient reason for an exception to this category for the reporting of environmental violations to governmental agencies. In conjunction with the filing of this Memorandum and Order, the Court will enter Defendants' proposed Protective Order modified with the exception set forth above.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Protective Order requiring Defendants to preserve the operational and mechanical status quo at their Kansas City, Kansas fiberglass manufacturing plant is denied.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Compel Inspection (ECF No. 36) is granted. **Within thirty (30) days of this Memorandum and Order**, Defendant CertainTeed Corporation shall make its fiberglass manufacturing plant in Kansas City, Kansas, available for inspection, measurement, surveying, photographing, and testing by Plaintiff, as sought by Plaintiff's Request for Inspection, at a date and time to which the parties agree.

**IT IS SO ORDERED.**

Dated this 19th day of December, 2011 at Kansas City, Kansas.

                                                s/ David J. Waxse
                                                David J. Waxse
                                                U.S. Magistrate Judge